Sealed
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
FILED
*September 23, 2025*
Nathan Ochsner, Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | § | Criminal No. | **4:25-cr-0497** |
| | § | | |
| | § | | |
| v. | § | **Counts 1 -4**: | |
| | § | Wire Fraud, 18 U.S.C. 1343 | |
| UCHE FELIX EZEAMAMA, | § | | |
| Defendant. | § | SEALED | |

## INDICTMENT

THE GRAND JURY CHARGES:

### GENERAL ALLEGATIONS

At various times material to this Indictment:

*Defendant and Related Business Entities*

1.   Defendant **UCHE FELIX EZEAMAMA** (EZEAMAMA) was a resident of Houston, Texas, within the Southern District of Texas.

2.   Defendant **EZEAMAMA** was affiliated with the purported business entities Chon Dal, Inc, and Houston Technology, Inc. which were registered in some capacity with either the Texas Secretary of State or the State of Florida.

*The Small Business Administration and the CARES Act*

3.   The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic

recovery of communities after disasters.

4. On or about March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for expansion of others, including programs created and/or administered by the SBA. The CARES Act established the Paycheck Protection Program and enhanced the Economic Injury Disaster Loan Program.

### *The Paycheck Protection Program*

5. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The PPP provided for government-backed loans designed to incentivize small businesses to keep their workers on the payroll by providing funds for up to 8 weeks of estimated payroll costs, including benefits.

6. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant (through its authorized representative) was required to state, among other things: (a) its average monthly payroll expenses; and (b) its number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its

payroll expenses. The applicant was also required to certify that the business was in operation on February 15, 2020, and had employees or paid independent contractors.

7. A business's PPP loan application was received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

8. PPP loan proceeds were required to be used by the business on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

### *The Economic Injury Disaster Loan Program*

9. The Economic Injury Disaster Loan ("EIDL") program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

10. The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses. The amount of the advance was determined by the number of employees the applicant reported under penalty of perjury. The advances did not have to be repaid.

11. In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees on a given date corresponding to the disaster at issue, as well as gross revenue and

3

cost of goods sold for the 12-month period preceding that date. In the case of EIDLs for COVID-19 relief, the given date was January 31, 2020, and the 12-month period was February 2019 through January 2020. The applicant was required to certify that the information in the application was true and correct to the best of the applicant's knowledge under the penalty of perjury.

12. EIDL applications were submitted directly to the SBA and did not request a specific loan amount. If the SBA approved the application, it determined the amount of the loan based, in part, on the information in the application concerning the number of employees, gross revenue, and cost of goods. The SBA directly issued any funds it approved as an advance or as an EIDL. Applicants were permitted to use EIDL funds for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

### *Relevant Lending Institutions & Other Financial Institutions*

13. The Federal Deposit Insurance Corporation ("FDIC") is an agency of the federal government which insures the deposits of member banks against loss with the purpose of preventing their collapse and instilling public confidence in the nation's banking institutions.

14. Wells Fargo Bank was an FDIC-insured financial institution based in California.

15. Bank of America was an FDIC-insured financial institution based in North Carolina.

16. Unity Bank was an FDIC-insured financial institution based in New Jersey.

17. Wells Fargo Bank, Unity Bank, and Bank of America were authorized by the SBA to participate as PPP lenders to small businesses.

## COUNT ONE: WIRE FRAUD
### (18 U.S.C. § 1343)

18.     The Grand Jury re-alleges paragraphs 1 through 17 of this Indictment.

19.     On or about April 6, 2020, in the Southern District of Texas and elsewhere, the defendant,

## UCHE FELIX EZEAMAMA

did knowingly devise and intend to devise a scheme and artifice to defraud the Small Business Administration (SBA), an executive branch agency of the United States Government, by means of materially false and fraudulent pretenses and representations, namely by causing the Small Business Administration to disburse monetary funds via SBA Loan Number 3441857905 to Wells Fargo Bank account ending in x4737, controlled by defendant UCHE FELIX EZEAMAMA, through a series of false and fraudulent statements, namely that he owned and operated the business "CHON DAL, Inc.," when in fact such business did not operate in the claimed capacity, and by submitting false and fraudulent documents to obtain the monies, all of which were transmitted via wire transaction between the Small Business Administration located Little Rock, Arkansas, and Herndon, VA, and the defendant's Wells Fargo Bank account, located in San Francisco, California and Houston, Texas in interstate commerce in furtherance of executing the scheme.

All in violation of 18 U.S.C. § 1343.

## COUNT TWO: WIRE FRAUD
### (18 U.S.C. § 1343)

20.     The Grand Jury re-alleges paragraphs 1 through 17 of this Indictment.

21. On or about July 17, 2020, in the Southern District of Texas and elsewhere, the defendant,

## UCHE FELIX EZEAMAMA

did knowingly devise and intend to devise a scheme and artifice to defraud the Small Business Administration (SBA), an executive branch agency of the United States Government, by means of materially false and fraudulent pretenses and representations, namely by causing the Small Business Administration to authorize Wells Fargo Bank to disburse monetary funds via SBA Loan Number 9089278106 to Wells Fargo Bank account ending in x4737, controlled by defendant UCHE FELIX EZEAMAMA, through a series of false and fraudulent statements, namely that he owned and operated the business "CHON DAL, Inc.," when in fact such business did not operate in the claimed capacity, and by submitting false and fraudulent documents to obtain the monies, all of which were transmitted via wire transaction between the Small Business Administration, located Little Rock, Arkansas, and Herndon, VA, and the defendant's Wells Fargo Bank account, located in San Francisco, California and Houston, Texas in interstate commerce in furtherance of executing the scheme.

All in violation of 18 U.S.C. § 1343.

## COUNT THREE: WIRE FRAUD
**(18 U.S.C. § 1343)**

22. The Grand Jury re-alleges paragraphs 1 through 17 of this Indictment.

23. On or about February 9, 2021, in the Southern District of Texas and elsewhere, the defendant,

## UCHE FELIX EZEAMAMA

did knowingly devise and intend to devise a scheme and artifice to defraud the Small Business Administration (SBA), an executive branch agency of the United States Government, by means of materially false and fraudulent pretenses and representations, namely by causing the Small Business Administration to authorize Wells Fargo Bank to disburse monetary funds via SBA Loan Number 6772948804 to Wells Fargo Bank account ending in xx4737, controlled by defendant UCHE FELIX EZEAMAMA, through a series of false and fraudulent statements, namely that he owned and operated the business "CHON DAL, Inc.," when in fact such business did not operate in the claimed capacity, and by submitting false and fraudulent documents to obtain the monies, all of which were transmitted via wire transaction between the Small Business Administration located Little Rock, Arkansas, and Herndon, VA, and the defendant's Wells Fargo Bank account, located in San Francisco, California and Houston, Texas in interstate commerce in furtherance of executing the scheme.

All in violation of 18 U.S.C. § 1343.

### COUNT FOUR: WIRE FRAUD
### (18 U.S.C. § 1343)

24. The Grand Jury re-alleges paragraphs 1 through 17 of this Indictment.

25. On or about March 13, 2021, in the Southern District of Texas and elsewhere, the defendant,

### UCHE FELIX EZEAMAMA

did knowingly devise and intend to devise a scheme and artifice to defraud the Small Business Administration (SBA), an executive branch agency of the United States Government, by means of materially false and fraudulent pretenses and representations, namely by causing the Small

7

Business Administration to authorize Unity Bank to disburse monetary funds via SBA Loan Number 9758238604 to Bank of America Bank account ending in x6766, controlled by defendant UCHE FELIX EZEAMAMA, through a series of false and fraudulent statements, namely that he owned and operated the business "Houston Technology Inc.," when in fact such business did not operate in the claimed capacity, and by submitting false and fraudulent documents to obtain the monies, all of which were transmitted via wire transaction between the Small Business Administration located Little Rock, Arkansas, and Herndon, VA, and the defendant's Bank of America bank account, located in Charlotte, North Carolina and Houston, Texas in interstate commerce in furtherance of executing the scheme.

All in violation of 18 U.S.C. § 1343.

### *Loss Amounts*

26. From on or about June 24, 2020 to on or about April 21, 2021 and as a result of defendant EZEAMAMA's material misrepresentations and scheme to defraud the Small Business Administration, defendant EZEAMAMA caused a total actual loss to the Small Business Administration of $5,163,000.00.

27. Additionally, during the relevant timeframe, through a similar scheme to defraud and material misrepresentations to the Small Business Administration, defendant EZEAMAMA attempted to secure another PPP loan for an additional $4,740,000.00, but this loan was denied.

### **NOTICE OF FORFEITURE**
### **(18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))**

28. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States gives notice to defendants that in the event of their

8

conviction of any of the offenses charged in Counts One through Four of this Indictment, all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses, is subject to forfeiture.

### *Money Judgment and Substitution Assets*

29.     Defendant is notified that upon conviction, the United States will seek a money judgment against him or her. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the defendant up to the amount of the money judgment against that defendant.

 

Original Signature on File

NICHOLAS J. GANJEI  
United States Attorney  
Southern District of Texas

Grand Jury Foreperson

By: *Thomas Carter*  
THOMAS H. CARTER  
Assistant United States Attorney  
Southern District of Texas